# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# LUFKIN DIVISION

| | | |
|---|---|---|
| FERNANDO C. PUENTE | § | |
| | § | CIVIL ACTION NO. 9:13cv126 |
| WARDEN MUNIZ, ET AL | § | |

## MEMORANDUM OPINION AND ORDER

Fernando C. Puente, an inmate confined at the Polunsky Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se*, filed this lawsuit against Assistant Warden Donald Muniz, Assistant Warden Michael Butcher, Sergeant Helen Sheffield, Officer Shawn Dorman, Administrative Assistant Penny Richie, Administrative Assistant Tiffany Colbert, Librarian Richard McKee, Grievance Investigator Linda Martin and Grievance Investigator Savannah Harris.

### Factual Allegations

Plaintiff alleges that on September 19, 2012, a "shakedown" was conducted of his cell by two officers who had been sent by defendant Sheffield. The officers told him they were looking for drugs and a cell phone. When plaintiff reentered his cell, he noticed his radio was missing. He asked one of the officers who had conducted the search about the radio, but did not receive any answer. A female officer subsequently approached and asked plaintiff about a plastic-coated receipt that was taped to the top of his radio. He told her it had been prepared by another female officer. Plaintiff asked what the problem was and said he wanted his radio back.

At this point, two officers were standing at a distance and stated they were the main officers for such matters.[1] One of these officers asked plaintiff for the name of the female officer who had prepared the plastic-coated receipt and asked why she was performing special favors for him. He

---

[1] While it is not entirely clear, they appear to be the same two officers that conducted the search of plaintiff's cell.

then asked plaintiff where the drugs were and observed that plaintiff may have already given the cell phone back to the female officer.

Plaintiff states that he did not know anything about drugs or a cell phone and only wanted his radio back. He was told that if he would provide the name of the female officer who had prepared the receipt, they would talk about giving his radio back to him. Plaintiff told them he did not know the name of the officer. They replied by stating, "No name, no radio."

Plaintiff states that as he was starting to clean up the mess caused by the officers who had searched his cell, he noticed he was missing several loose sheets of paper (the "Native Studies Papers"). The sheets contained information from websites and notes plaintiff had written concerning his native religion and culture and ancient language, ways and beliefs.[2]

When he discovered the Native Studies Papers were missing, he looked outside his cell to see if he could get an officer's attention. He asked Officer Morris for the names of the officers who had conducted the search and the confiscation form for items that had been taken from the cell. When Officer Morris repeated plaintiff's questions to the officers who conducted the search, they stated they do not provide confiscation forms for gang related items and that plaintiff should contact the gang intelligent officer for their names.

Later that day, plaintiff spoke to Major McMullen and told him what had happened. Major McMullen sent two officers to look for plaintiff's radio. Two hours later, the radio was brought to plaintiff. The radio was cracked from the top and had wires sticking out of the back. He was told the radio would be taken away because it had been altered. He states the damage must have been caused by the officers who searched his cell. Plaintiff then wrote two Step 1 grievances, one for the damage to his radio (the "Radio Step 1 Grievance"), and one for the taking of the Native Studies Papers (the "Native Studies Papers Step 1 Grievance").

---

[2] Plaintiff also states that while he has been at the Polunsky Unit, a book he wrote over period of 5-6 years was taken from him. In addition, five other books were taken.

Plaintiff alleges that on September 27, during mail call, he received a large envelope from defendant Sheffield. The envelope contained all of the Native Studies Papers except for two sheets of paper that were considered gang related. Plaintiff states the two sheets were not gang related, but instead contained poems and prayers. She also provided him with the confiscation form concerning the search of his cell. It identified the officer who took the items as "unknown."

Plaintiff states that on October 26, he received a notice stating additional time would be needed to rule on the Native Studies Papers Step 1 Grievance. He thought that the grievance office might have been considering both of his Step 1 grievances together.

In November, plaintiff received a response to his Native Studies Papers Step 1 Grievance. The grievance was denied by defendant Muniz. He waited a few more days for the response to his Radio Step 1 Grievance, but did not receive one. He wrote the grievance department a letter regarding it. He received a response stating that his Radio Step 1 Grievance had not been received.

On December 11, plaintiff wrote a Step 2 grievance regarding the Native Studies Papers (the "Native Studies Papers Step 2 Grievance") and attached the confiscation form. He also sent a letter to the grievance staff at prison headquarters stating that the Radio Step 1 Grievance, as well as a Step 1 grievance he had filed concerning defendant Dorman, had disappeared. He placed these items in a sealed envelope. He attached to the front of the envelope a request to defendant Richie, the mailroom supervisor, that it be sent directly to prison headquarters and not the grievance department at the Polunsky Unit. He asked defendant Richie to verify that this had been done, but never received a response from her. He states this envelope also disappeared.

Plaintiff alleges that on November 6, he was exercising in the dayroom when an inmate asked him if he could help untangle a line that had become stuck to the bars. He stopped to untangle the line and resumed his workout.

After plaintiff finished his workout, defendant Dorman and another officer came to take him back to his cell. Defendant Dorman stated he was going to write a disciplinary case charging plaintiff and the other inmate with trafficking and trading. Plaintiff told him that all he had done was

untangle a wire and continue his workout. The other inmate shouted to defendant Dorman that plaintiff was not trafficking and trading and that defendant Dorman should come talk to him. When defendant Dorman placed plaintiff in his cell, he saw the other officer going in the direction of the cell where the other inmate was housed. Defendant Dorman said that if plaintiff told him who the other inmate was "running line" to, he would reconsider charging plaintiff with a disciplinary offense. Plaintiff told him he did not know what the other inmate was involved in.

Plaintiff states that not long after defendant Dorman left his cell, he heard a lot of inmates shouting. He assumed this was other inmates shouting his name and saying things about him.

Around 7:00 a.m. the next morning, another inmate woke plaintiff up and gave him a letter. The letter was from another inmate and informed plaintiff defendant Dorman had told the other inmate plaintiff had snitched on him. He states he received three similar letters from other inmates.

Plaintiff subsequently filed a Step 1 grievance concerning defendant Dorman (the "Dorman Step 1 grievance"). Defendant Martin picked up the grievance from his cell. After he filed the grievance, his cell was shaken down and some of the letters from other inmates were taken. On December 4, he asked about this grievance and was told it had not been received.

When plaintiff saw defendant Dorman a couple of days after the incident, he confronted him about the situation. Defendant Dorman said he was sorry and apologized. Plaintiff told him that an apology would not stop the rumors and showed him the letters from other inmates. Plaintiff states defendant Dorman later came by his cell and signed a statement saying that what he had said about plaintiff was a lie.

On January 10, 2013, plaintiff spoke with Officer Whitesl, a property officer. He described his problem to her in writing. She later told him it did not make any sense that his radio was destroyed after two days because regulations provided that confiscated property was to be held for 60 days before being destroyed. She told him he should resubmit his Radio Step 1 Grievance. After plaintiff told her it would now be out-of-time, she told plaintiff she would see that it was processed. Plaintiff refiled the grievance on January 16 (the "Resubmitted Step 1 Grievance").

On February 13, plaintiff was in the dayroom when he saw defendant Harris, who worked in the grievance department. He asked her to check and see whether the Resubmitted Step 1 Grievance had been received. She rudely stated that she had nothing to talk to plaintiff about. On February 14, he wrote a grievance concerning her (the "Harris Step 1 Grievance"). He states Officer Haggar picked the grievance up from his cell because defendant Martin refused to do so.

On February 15, plaintiff was notified that a 40 day extension would be required to resolve the Resubmitted Step 1 Grievance.

By March 15, he had not received a response to the Harris Step 1 Grievance. By early April, he had not received a response to the Resubmitted Step 1 Grievance. He then went ahead and filed another Step 1 grievance. Defendant Butcher denied this grievance on April 19. As a result of the dismissal, he became aware that his Resubmitted Step 1 Grievance had been dismissed on February 27. He states he never received a copy of the dismissal.

On April 26, he filed a Step 2 grievance. On July 16, he received a response to the grievance signed by Linda Richey. While the denial was dated June 27, he did not receive it until July 16. He states the grievance staff had altered the grievance by removing a letter and a form he had attached to it.

Plaintiff further alleges that once he arrived on the Polunsky Unit he began to have difficulty with his mail. He stopped hearing from certain individuals who had previously written him. He also stopped receiving newspaper articles from an organization. In addition, he states that any items he mailed concerning his Mexican roots would either not arrive at all or would be damaged. He unsuccessfully filed Step 1 and Step 2 grievances concerning the problems.

In addition, plaintiff complains that staff at the law library have made things difficult for him. He states that when he asks for a copy of a case filed by an inmate against a correctional facility he is told that a copy of the case is not available.

Plaintiff states he sends family members, including his granddaughters, drawing cards and pictures he draws. However, law library staff, including defendant McKee, refuse to send these

pictures out in the mail. He is told that sending out the items is against regulations, but he states the regulation cited does not prohibit sending out pictures and art.

Finally, plaintiff alleges defendant McKee has refused to provide him with indigent supplies.

Standard of Review

Pursuant to 28 U.S.C. § 1915A, a district court shall dismiss a complaint if it determines the complaint is frivolous, malicious or fails to state a claim upon which relief may be granted. "A district court may dismiss as frivolous [a complaint] ... if it lacks an arguable basis in law or fact." *Geigers v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). The statute gives courts "'the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" *Denton v. Hernandez,* 504 U.S. 25, 32 (1992) (citation omitted). "Examples of complaints within the clearly baseless category are those which describe fanciful, fantastic, or delusional scenarios." *Ancar v. Sara Plasma*, *Inc.*, 964 F.2d 465, 468 (5th Cir. 1992). "Pleaded facts which are merely improbable or strange, however, are not frivolous ...." *Id*.

In order to state a claim upon which relief may be granted, a complaint does not need detailed factual allegations. However, the plaintiff must allege sufficient facts to show more than a speculative right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal for failure to state a claim is appropriate if the complaint does not include enough facts to state a claim that is plausible on its face. *Id*. at 570. Conclusory allegations and a formulaic recitation of the elements of a cause of action will not suffice to prevent dismissal for failure to state a claim. *Id*. at 555.

## Analysis

*Outgoing Mail Claim Against Defendant McKee and Claim Against Defendant Dorman*

Plaintiff alleges defendant McKee improperly interfered with his ability to send out mail and that defendant Dorman failed to protect him by telling other inmates that he was a snitch. As these claims are generally unrelated to plaintiff's other claims, they will be severed from this action and proceed in a separate lawsuit.

*Deprivation of Property*

Plaintiff complains about his radio being destroyed and that two sheets of his Native Studies Papers were not returned to him.

A claim of deprivation of property by persons acting under color of state law is cognizable in a proceeding brought pursuant to 42 U.S.C. § 1983 under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. However, where the deprivation was random and unauthorized and the state has an adequate pose-deprivation tort remedy, due process is satisfied. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that the due process clause is not violated when a state employee intentionally deprives an individual of property where the state has a meaningful post-deprivation remedy); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981) (finding no due process violation when a state employee negligently deprives an individual of property if the state provides a post-deprivation remedy), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986); *see also Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (concluding that the plaintiff failed to state a claim regardless of whether the deprivation of property was the result of negligence or intentional misconduct); *Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994) (noting that deprivations of property caused by the misconduct of state officials do not violate constitutional due process, provided adequate postdeprivation remedies exist).

Post-deprivation remedies are not sufficient to satisfy due process if the deprivation of property is caused by conduct pursuant to established policy. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982). When the loss of property is the result a random and unauthorized act:

> It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under "color of law," is in almost all cases beyond the control of the State. Indeed in most cases, it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation.

*Parratt*, 451 U.S. at 541-42.

Plaintiff alleges his radio was taken in an unprofessional manner and that it was destroyed in a manner that was contrary to established procedures. He further alleges that the two sheets of the Native Studies Papers that were not returned to him were improperly taken.[3] As a result, the deprivation of property of which he complains was random and unauthorized. Therefore, plaintiff's due process rights were not violated because Texas provides an adequate post-deprivation remedy. *See Murphy*, 26 F.3d at 543-44 (holding that in Texas the tort of conversion is an adequate post-deprivation remedy); *Thompson v. Steele*, 709 F.3d 381, 383 (5th Cir. 1983) (holding that a state action for damages is an adequate post-deprivation remedy). This claim therefore fails to state a claim upon which relief may be granted.

*Religion*

Plaintiff alleges that by refusing to return two sheets of the Native Studies Papers and taking certain other actions, defendant Sheffield interfered with his ability to practice his religion. However, plaintiff has not described his religious beliefs. Nor had he described with any specificity how being deprived of the two sheets of paper placed a burden on his ability to practice his religion or how any other action taken by Sheffield interfered with the practice of his religion. As a result, plaintiff's allegations regarding this claim fail to demonstrate more than a speculative right to relief. This claim therefore fails to state a claim upon which relief may be granted.

*Grievances*

Plaintiff alleges that the defendants, other than perhaps defendant McKee, have destroyed grievances, failed to process grievances and improperly denied grievances, However, a prison inmate

---

[3] Plaintiff also alleges a book he wrote and certain other books were improperly taken. However, he does not allege that the taking was in accordance with established state procedure but, instead, argues that the taking was improper.

8

has no constitutionally protected liberty interest in having access to a prison grievance procedure. *Geiger*, *supra*, 404 F.3d at 374, Nor does prisoner have a constitutional right to have a grievance resolved to his satisfaction. *Id*.

Destroying grievances is unprofessional and reprehensible. Plaintiff's frustrations regading such actions are understandable. However, plaintiff's allegations regarding his grievances fail to demonstrate the violation of a constitutional right. As a result, this claim fails to state a claim upon which relief may be granted.

*Access to Courts*

Plaintiff alleges staff at the law library have failed to provide him with copies of certain cases. He also alleges defendant McKee failed to provide him with indigent supplies. The court will construe these allegations as an attempt to state a claim that plaintiff has been wrongfully denied access to the courts.

Prisoners have a constitutional right of access to the courts protected by the First Amendment right to petition for redress of grievances and the Fourteenth Amendment guarantees of procedural and substantive due process. *Bounds v. Smith*, 430 U.S. 817, 819 (1977); *Jackson v. Rodriguez*, 789 F.2d 307, 310 (5th Cir. 1986). "This right of access for prisoners is not unlimited, however; rather it encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Johnson v. Rodriguez*, 110 F.3d 299, 310-11 (5th Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 356 (1996)).

Plaintiff has not alleged or demonstrated that not receiving copies of certain cases or indigent supplies has prevented him from filing or litigating cases which challenge his conviction or the conditions of his confinement. This claim therefore fails to state a claim upon which relief may be granted.

*Incoming Mail*

Plaintiff alleges he has had difficulty receiving mail from certain individuals and organizations. He states defendants Richie and Colbert, who work in the mailroom, are responsible for his not receiving mail. However, plaintiff has not identified any specific actions taken by these defendants that interfered with his ability to receive mail. His allegations regarding interference with his incoming mail by defendants Richie and Colbert are conclusory and therefore insufficient to state a claim upon which relief may be granted.

ORDER

Plaintiff's failure to protect claim against defendant Dorman and his claim regarding interference with outgoing mail by defendant McKee are **SEVERED** from this lawsuit and shall proceed as a separate action. The resulting action shall be assigned according to the regular practice for allotment of newly-filed civil actions. Both plaintiff's original complaint and his amended complaint (doc. nos. 1 and 13) shall be filed in the new action. Further, as document numbers 48, 49 and 50 relate to plaintiff's outgoing mail claim, they shall be **STRICKEN** from the docket in this action and filed in the new action. Plaintiff's remaining claims are **DISMISSED** for failure to state a claim upon which relief may be granted. An appropriate final judgment shall be entered.

**SIGNED** this the **29** day of **September, 2016.**

Thad Heartfield
United States District Judge